Ross G. Walker v. Commissioner.
Ross G. Walker v. Commissioner
Docket No. 6696.
United States Tax Court
1946 Tax Ct. Memo LEXIS 150; 5 T.C.M. (CCH) 549; T.C.M. (RIA) 46159; June 28, 1946
*150 William G. Heiner, Esq., 1321 Park Blvd., Pittsburgh 22, Pa., for the petitioner. Brooks Fullerton, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The petitioner contests a deficiency in his income tax for the calendar year 1941 in the amount of $2,385.80. Questions in issue are (1) whether the petitioner is liable to income tax upon a share of the earnings of a partnership of which the petitioner's wife purported to be a partner, and (2) whether the respondent erred in adding to petitioner's gross income the sum of $900 received by him as an allowance for business expenses which respondent determined to be in excess of expenses actually paid. Findings of Fact The petitioner is a resident of New Kensington, Pa. He filed his income tax return for 1941 with the collector of internal revenue for the twenty-third district of Pennsylvania, at Pittsburgh. His wife also filed a return for 1941 in which she reported her distributable share of the profits of the partnership known as Dyke Automotive Stores for 1941 in the amount of $11,421.99. From 1921 to 1931 the petitioner and his brother, James E. Walker, were partners in a business known *151 as Walkers Auto Supply at New Kensington. It was engaged in selling automobile accessories. It purchased such accessories from Dyke Motor Supply Co. of Pittsburgh, Pa. This partnership was actively managed by the petitioner who drew a salary during this period of $75 per week and devoted substantially all of his time to the partnership. The partnership did a profitable business. The petitioner and his three brothers, James E. Walker, Harry H. Walker, and Fred A. Walker, formed a partnership in 1927 known as Walker Auto Sales. This partnership was engaged in the business of selling automobiles. Its chief place of business was in the Borough of Kittanning. It had branch places of business at New Kensington and Clarion. It was actually managed by petitioner's brothers. Walker Auto Sales partnership became involved financially in the latter part of 1929 and was heavily indebted to a Clarion bank and to two Kittanning banks upon its notes, to which all the four brothers were individual endorsers. Upon the nonpayment of this indebtedness judgments were entered against the partnership and the individual partners. The partnership went into bankruptcy in 1931. The assets of Walkers Auto *152 Supply were marshaled in the bankruptcy proceedings of Walker Auto Sales and were sold at a trustee in bankruptcy's sale on June 20, 1931. Title to the assets was taken in the name of N. D. Heilman, father of Lillie G. Walker, petitioner's wife, who was the successful bidder at a price of $1,600. This amount of money was supplied to Heilman by petitioner's wife out of funds in her hands, a part of which she owned at the time of her marriage in 1921 and a part of which had been saved out of weekly allowances advanced to her by petitioner. Dyke Motor Supply Co., of Pittsburgh, from which Walkers Auto Supply obtained its automobile accessories, was a partnership composed of two brothers, Hubert Dyke and A. E. Dyke. Walkers Auto Supply in New Kensington had been a profitable customer of the Dyke Motor Supply Co. and the Dyke brothers were interested in having a store in New Kensington as an outlet for its products. Hubert Dyke was on his way to attend the trustee in bankruptcy's sale of the assets of Walkers Auto Supply on June 20, 1931, but did not reach there in time for the sale. He immediately contacted the petitioner, whom he recognized as an energetic and efficient salesman, for *153 the purpose of managing a store for him in New Kensington. The petitioner was anxious for such a position. The business at New Kensington formerly conducted under the name of Walkers Auto Supply was conducted under the name of N. D. Heilman for about a month following the trustee in bankruptcy's sale on June 20, 1931, or until the incorporation of Dyke Automotive Stores, Inc., as shown below. Since Hubert Dyke was a member of a number of partnerships he decided that the store which he contemplated establishing in New Kensington should be operated by a corporation. He chose the name "Dyke Automotive Stores, Inc." for the new business. Dyke Automotive Stores, Inc., was incorporated under the laws of the Commonwealth of Pennsylvania on July 27, 1931. Its authorized capital stock consisted of 100 shares at $100 par value each. On organization certificates for capital stock were issued as follows: No. of
Name
Shares
Hubert Dyke
25
A. E. Dyke
24
Peter Leonard
1
Walter T. Kinson
1
Lillie G. Walker
33
N. D. Heilman
16
Total
100
The consideration paid by Hubert Dyke and A. E. Dyke for the issuance to them and their nominees of 51 shares of the capital *154 stock of Dyke Automotive Stores, Inc., was $5,100 worth of automobile accessories. The consideration paid for the issuance to N. D. Heilman of 16 shares of the capital stock was substantially the same amount of automobile accessories which had been purchased in his name at the trustee in bankruptcy's sale for $1,600. The consideration for the issuance to Lillie G. Walker of 33 shares of the capital stock was $3,300 in cash. This cash was obtained by Lillie G. Walker in the following manner: The petitioner had certain life insurance policies which he had taken out about 6 years previously with the Mutual Life Insurance Co., of New York. He had 8 policies of life insurance, in all of which his wife, Lillie G. Walker, was named beneficiary. From May 28, 1931, to June 18, 1931, the petitioner borrowed $3,898 on 7 of these policies and of this amount he gave to his wife $3,300, with the understanding that she use it to purchase the 33 shares of Dyke Automotive Stores, Inc. Petitioner was unwilling at that time to purchase this stock in his own name because if he had done so it might have been subject to attachment by the creditors of Walker Automotive Sales. Previous to borrowing on *155 the insurance policies, the petitioner had ascertained that the cash surrender and loan values of his policies were not subject to attachment by his creditors. The petitioner went through bankruptcy in 1932 and was discharged on April 20, 1932. Petitioner managed the business of Dyke Automotive Stores, Inc., in New Kensington, Pa., from the summer of 1931 to the date of its dissolution in December 1940. The corporation continued to purchase its automobile accessories from Dyke Motor Supply Co. Petitioner's salary from this corporation was increased from $200 per month to $60 per week a few years after its incorporation. Dyke Automotive Stores, Inc., paid dividends in 1936 and in 1937. The amount of the dividends received by petitioner's wife was $1,960 in 1936 and $2,450 in 1937. These two amounts were included in petitioner's income tax returns for those years. Petitioner's wife, Lillie G. Walker, never filed any separate income tax returns prior to that filed for 1941. The corporation had a net income for the calendar year 1940 in the amount of $5,387.95. Its tax return for that year recited in Schedule F that petitioner was the owner of 49 percent of the corporation's stock. *156 On December 9, 1940, Hubert Dyke, A. E. Dyke and Lillie G. Walker entered into an agreement to dissolve Dyke Automotive Stores, Inc. The dissolution took place on December 31, 1940. On the same day the three entered into articles of copartnership under which Lillie G. Walker was to have a 49 percent interest, Hubert Dyke a 26.273 percent interest, and A. E. Dyke a 24.727 percent interest. The partnership name was Dyke Automotive Stores. All of the decisions with regard to the organization and dissolution of the corporation and the organization of the partnership were made by Hubert Dyke and petitioner. Dyke had no business conferences with petitioner's wife. The books of the corporation, as also of the succeeding partnership, were kept in Pittsburgh at the place of business of Dyke Motor Supply Co. Hubert Dyke took an active interest in the business. Petitioner's wife rendered no services to the business and took no part in its management, either as a stockholder or as a partner. The petitioner managed the New Kensington store in the same manner as he had formerly managed Dyke Automotive Stores, Inc. He received a salary from the partnership in the year 1941 in the amount of *157 approximately $3,100. In conducting the operations of Dyke Automotive Stores, Inc., checks were signed only by the officers of the corporation until October 30, 1940, when the petitioner was authorized to sign checks. This authorization was granted by reason of the delay in mailing checks from New Kensington to Pittsburgh for the signature of Hubert Dyke. Likewise, petitioner was authorized to sign checks for the partnership, Dyke Automotive Stores. In 1940 the petitioner was instrumental in getting the corporation to sell a line of sporting goods. He caused to be organized a number of gun clubs within a radius of from 100 to 200 miles of New Kensington. He promoted skeet and trap shoots. He personally attended many meetings of these gun clubs. This additional line proved very profitable. Approximately one-half of the total sales of the partnership for 1941 were of these sporting goods - guns, shells, targets, etc. The total profits of the partnership for 1941, after the deduction of petitioner's salary, amounted to $23,310.18, of which the share paid to his wife was $11,421.99 which was the amount reported by her in her income tax return for that year. During 1941 the petitioner *158 attended many of the gun club shoots. He used his own automobile in driving to and from such meetings and sometimes used a truck for the delivery of supplies. He was allowed, in addition to his salary, $175 per month to reimburse him for expenses. This allowance in the taxable year did not quite equal his expenditures. He kept no permanent exact records of the amounts which he spent but gave informal weekly reports to the bookkeeper of the partnership to justify the allowance paid of $2,100. Of this amount, respondent has included $900 in petitioner's income as "expense allowance * * * in excess of actual expenses incurred". Opinion KERN, Judge: Under the reasoning of (February 25, 1946); ; and ; we can not escape the conclusion that respondent correctly included in petitioner's income for the taxable year the amount distributed by the partnership to his wife. In reality, and for tax purposes, it was income earned by him, owned by him and taxable to him. "The income involved was not derived from mere ownership"; it was derived from the operation and management *159 of a business by petitioner and Dyke, not by petitioner's wife. Even if capital had been an important factor in producing the partnership income (and the record shows that it was not), we are of the opinion that the bulk of the capital invested in the name of petitioner's wife was, in reality, invested by petitioner. As to the $3,300 which petitioner turned over to his wife for the purpose of purchasing shares of Dyke Automotive Stores, Inc., and as to the amounts saved by petitioner's wife from weekly household allowances made by him the record does not indicate any donative intent on the part of petitioner. To the contrary the record indicates that these sums were invested at petitioner's instance, in a business which petitioner wished to operate and manage, on petitioner's behalf, and the investment was made through his wife and in her name solely for petitioner's convenience with regard to creditors and not for the purpose of accomplishing a gift by petitioner to his wife. There is evidence that some undisclosed part of the $1,600 used at the bankruptcy sale belonged to petitioner's wife, but because the record does not show the amount of this part and does show that capital *160 was an unimportant factor in the earning of the income here in question, we make no attempt to allocate to petitioner's wife any of the income of the partnership. See concurring opinion of Mellott, J., in . It should also be pointed out that the record here shows that petitioner's wife in no way participated in the conduct of the business either as a stockholder or as a partner. In both relationships her status was purely nominal, - a status which was consistent with our conclusion that the investment in the business made through her and in her name was, in realty, the investment of petitioner. Petitioner places great stress on the fact that tax avoidance played no part in the motivation of the transaction and that the wife's participation was for the sole purpose of avoiding attachments by his personal creditors. This argument does not help petitioner; it merely emphasizes the unreality of his wife's nominal status as a partner. If ownership or status is disguised, the taxing authorities may look through the disguise to the realities, even though the disguise is devised and assumed for purposes other than tax avoidance. The second *161 question for decision is whether respondent erred in adding to petitioner's taxable income for 1941 the sum of $900 which was paid to petitioner as an allowance for business expenses. The total amount of allowances for business expenses paid to petitioner during the year was $2,100. Respondent determined that his actual expenses were $1,200. In our opinion petitioner has proved that his actual expenses were equal to or greater than the amount of $2,100. Therefore, on this issue our decision is for petitioner. Decision will be entered under Rule 50.